SMITH v DEPARTMENT OF HUMAN SERVICES DIRECTOR

Docket Nos. 309447 and 309894. Submitted June 5, 2012, at Detroit. Decided June 26, 2012, at 9:05 a.m. Vacated, 493 Mich 947.

Megan Smith, Nicole Kelly, Roshawnda Williams, and Nicole Johnson brought an action against the Department of Human Services (DHS) Director in the Genesee Circuit Court, asserting that the director had exceeded her authority by implementing a 60-month time limit for receiving cash-assistance benefits from the state for members of plaintiffs' class. The DHS uses federal Temporary Assistance for Needy Families (TANF) funds to administer Michigan's Family Independence Program (FIP), which provides cash assistance to families who meet eligibility requirements. FIP assistance is limited to a cumulative total of 48 months, but some months in which assistance is received may be excluded from the recipient's cumulative total if certain exemptions apply. Federal law generally provides for a 60-month limit on the use of TANF funds. The DHS Director decided to terminate FIP assistance to those recipients who had exhausted the federal 60-month TANF limit even if those recipients had not exhausted the state's 48-month limit because some months had been excluded in calculating the cumulative total. Plaintiffs brought their action on behalf of themselves and other similarly situated individuals to challenge the DHS Director's authority to impose the 60-month time limit through the implementation of an administrative policy. The court, Geoffrey L. Neithercut, J., granted plaintiffs' motion for a preliminary injunction to enjoin the DHS Director from terminating cash-assistance benefits on the basis of the 60-month limit. The court also ordered that the case could proceed as a class action on behalf of all current and future FIP recipients who had been or would be denied or terminated from FIP assistance on the basis of the 60-month limit when they had not received FIP assistance for 48 countable months under Michigan's Social Welfare Act. Defendant filed an interlocutory application for leave to appeal. In lieu of granting leave to appeal, the Court of Appeals, M. J. KELLY, P.J., and METER and RONAYNE KRAUSE, JJ., reversed the order granting the preliminary injunction and vacated the preliminary injunction, in an unpublished order, issued November 3, 2011 (Docket No. 306846). The circuit court subsequently granted summary dispo-

sition in favor of plaintiffs, concluding that the DHS Director had exceeded her authority under the separation of powers doctrine. The circuit court entered a judgment permanently enjoining the DHS Director from terminating or denying cash-assistance benefits based on time limits other than the 48-countable-months limit set in the Social Welfare Act. Plaintiffs appealed with regard to the circuit court's order granting summary disposition (Docket No. 309447) and with regard to the injunctive relief ordered by the circuit court (Docket No. 309894). With regard to Docket No. 309447, the DHS Director filed an application for leave to appeal in the Supreme Court before a decision by the Court of Appeals. The Supreme Court denied the bypass application, but directed the Court of Appeals to decide the case on an expedited basis. 491 Mich 898 (2012). The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Under the 1963 Michigan Constitution, the powers of government are divided into three branches: legislative, executive, and judicial. No person exercising the powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in the Constitution. An administrative agency that acts outside its statutory boundaries usurps the role of the Legislature. MCL 400.57b(1)(f) authorizes the DHS to add eligibility criteria that are not required for federal or state funds but are necessary to accomplish the goals of the FIP. One of the goals of the FIP is to achieve its efficient, fair, and cost-effective administration, and the DHS Director averred in an affidavit that fiscal soundness was one of the reasons for terminating FIP assistance when TANF funds are exhausted. Accordingly, the DHS Director was statutorily authorized to add the challenged eligibility criterion, and the circuit court erred by concluding that the DHS Director did not have the authority under the Social Welfare Act to limit FIP assistance to 60 months. There was no violation of the separation of powers doctrine.

2. Under the Social Welfare Act, the DHS may promulgate all rules necessary or desirable for the administration of programs under the act. Those rules must generally be promulgated under the Administrative Procedures Act. However, the DHS may develop policies to implement requirements that are mandated by federal statutes or regulations as a condition of the receipt of federal funds, and policies so developed are exempt from the rule promulgation requirements of the Administrative Procedures Act. Under the federal TANF statutes, a state to which a grant is made may not use any part of the grant to provide assistance to a family which includes an adult who has received assistance under any

state program funded by TANF attributable to funds provided by the federal government for 60 months, whether or not consecutive, after the date the state program so funded commences. Thus, by cutting off federal funds from individuals after they received 60 months of benefits, the DHS was following a federal mandate and did not need to follow the rulemaking procedures outlined in the APA. However, to the extent that the pertinent FIP benefits were derived from state funds, the policy was not mandated by federal statutes or regulations and, accordingly, the policy was required to be promulgated as a rule under the APA. The failure of the DHS to follow the procedures for promulgating rules rendered the policy invalid to the extent that state funding was involved, and the trial court correctly ruled the policy invalid to that extent.

3. The prerequisites for a class action are (1) a class so numerous that joinder of all members is impracticable, (2) questions of law or fact common to the members of the class that predominate over questions affecting only individual members, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately assert and protect the interests of the class, and (5) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice. The circuit court did not clearly err by concluding that the validity of the DHS Director's implementation of the 60-month time limit was a predominating issue of law. Further, the requirement that maintenance of the action as a class action be superior to other available methods of adjudication is, in essence, a practicality test. The possible effect of the case on funding for FIP assistance would not be a proper consideration in determining whether maintenance of the action as a class action would be superior to other available methods of adjudication. And, contrary to the DHS's argument, an action for declaratory judgment under MCL 24.264 would not have been applicable to plaintiffs' claim because it did not involve promulgated rules. The DHS Director failed to establish any basis for reversing the circuit court's decision to certify the case as a class action.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. CONSTITUTIONAL LAW — SEPARATION OF POWERS — ADMINISTRATIVE AGENCIES — RULEMAKING.

Under the 1963 Michigan Constitution, the powers of government are divided into three branches: legislative, executive, and judicial;

no person exercising the powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in the Constitution; an administrative agency that acts outside its statutory boundaries usurps the role of the Legislature; the Department of Human Services (DHS) is statutorily authorized to add eligibility criteria for the receipt of Family Independence Program benefits that are not required for federal or state funding but are necessary to accomplish the goals of the program; one of the goals of the program is to achieve its efficient, fair, and cost-effective administration; accordingly, the DHS is statutorily authorized to add eligibility criteria that promote the program's efficient, fair, and cost-effective administration and may do so without violating the separation of powers doctrine (Const 1963, art 3, § 2; MCL 400.57a[3][a], MCL 400.57b[1][f]).

2. ADMINISTRATIVE LAW — AGENCIES — RULEMAKING AUTHORITY.

Under the Social Welfare Act, the Department of Human Services (DHS) may promulgate all rules necessary or desirable for the administration of programs under the act; those rules must generally be promulgated under the Administrative Procedures Act (APA), but the DHS may develop policies to implement requirements that are mandated by federal statutes or regulations as a condition of the receipt of federal funds, and policies so developed are exempt from the rule promulgation requirements of the APA (MCL 400.6).

3. ACTIONS — CLASS ACTIONS — PREREQUISITES FOR CLASS CERTIFICATION.

The prerequisites for a class action are (1) a class so numerous that joinder of all members is impracticable, (2) questions of law or fact common to the members of the class that predominate over questions affecting only individual members, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately assert and protect the interests of the class, and (5) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice (MCR 3.501[A][1]).

*Jacqueline Doig* and *Terri L. Stangl* for plaintiffs.

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *Richard A. Bandstra,* Chief Legal Counsel, and *Joseph E. Potchen,* Assistant Attorney General, for defendant.

Before: Servitto, P.J., and Meter and Fort Hood, JJ.

Meter, J. These consolidated appeals involve a class action by individuals whose benefits under a cash-assistance program administrated by the Department of Human Services (DHS) in accordance with the Social Welfare Act, MCL 400.1 *et seq.*, were terminated. In Docket No. 309447, defendant, the DHS Director, appeals as of right the circuit court's order granting summary disposition in favor of plaintiffs with respect to their claim that the DHS Director exceeded her authority by implementing a 60-month time limit for receiving cash-assistance benefits for members of plaintiffs' class. In Docket No 309894, the DHS Director appeals as of right the injunctive relief ordered by the circuit court on the basis of that determination. We affirm in part and reverse in part.

## I. BACKGROUND

This case involves cash-assistance benefits provided to individuals under the Family Independence Program (FIP), as established under the Social Welfare Act and amended by 2011 PA 131, effective October 1, 2011. Pursuant to MCL 400.57a(1), "[t]he department[1] shall establish and administer the family independence program to provide assistance to families who are making efforts to achieve independence." The time limit established by the Legislature for FIP assistance to be paid to an individual, beginning October 1, 2007, is "not longer

---

[1] The "department" is defined in the Social Welfare Act to mean the Family Independence Agency. MCL 400.1(4). The Family Independency Agency was renamed the Department of Human Services pursuant to an executive reorganization order effective March 15, 2005. See MCL 400.226. The executive order states that all statutory references to the Family Independence Agency shall be deemed references to the Department of Human Services. See *id.*

than a cumulative total of 48 months during that individual's lifetime." MCL 400.57r. A recipient of FIP assistance who does not comply with his or her individual family-self-sufficiency plan is penalized by having payments temporarily or permanently terminated, and those penalty months are still counted toward the 48-month total. MCL 400.57g(4). The Social Welfare Act also contains exclusions from the 48-month limit, even though payment is made to a recipient. MCL 400.57p.

The instant class action arose because the DHS uses federal Temporary Assistance for Needy Families (TANF) funds to administer the FIP, and application of the 48-month limit under the Social Welfare Act with the exemptions established by the Legislature leaves some individuals eligible for FIP benefits even though they have exhausted TANF funds.

The purpose of TANF is to provide flexibility for states in operating a program designed to:

> (1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;
>
> (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage;
>
> (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and
>
> (4) encourage the formation and maintenance of two-parent families. [42 USC 601(a).]

42 USC 601(b) specifies that the statutory provisions concerning TANF funds "shall not be interpreted to entitle any individual or family to assistance under any State program funded" by TANF. Federal law generally provides for a 60-month limit on the use of TANF

funds,[2] 42 USC 608(a)(7)(A), but that limit is subject to the following express rules of interpretation:

### (E) Rule of interpretation

Subparagraph (A) shall not be interpreted to require any State to provide assistance to any individual for any period of time under the State program funded under this part [42 USC 601 through 42 USC 619].

### (F) Rule of interpretation

This part shall not be interpreted to prohibit any State from expending State funds not originating with the Federal Government on benefits for children or families that have become ineligible for assistance under the State program funded under this part by reason of subparagraph (A). [42 USC 608(a)(7).]

Each of the four plaintiffs in this case received a "NOTICE OF CASE ACTION" from the DHS, dated October 11, 2011, which specified that FIP benefits were being cancelled effective November 10, 2011, for the following reason:

The intended action results from a change in law and policy that placed a lifetime time limit on the receipt of assistance through the Family Independence Program. Your group is no longer eligible for the Family Independence Program because the person(s) listed below has received 60 months or more of benefits, which is the time limit allowable for eligibility.

The notice informed each plaintiff that they had the right to a hearing to contest the DHS's calculation that assistance should stop because of the 60-month limit. The notice was provided to affected recipients of the cash-assistance benefits pursuant to an action in the

---

[2] While a state may exempt a family from the 60-month limitation by reason of hardship subject to certain limitations under 42 USC 608(a)(7)(C), it is undisputed in this case that the DHS's current policy does not allow for hardship exemptions.

United States District Court in which the adequacy of prior notices provided by the DHS was challenged by various individuals on procedural due-process grounds. See *Kelly v Corrigan*, unpublished order of the United States District Court for the Eastern District of Michigan, entered October 4, 2011 (Docket No. 11-14298).

On October 28, 2011, plaintiffs filed this action against the DHS Director on behalf of themselves and other similarly situated individuals[3] to challenge the DHS Director's authority to impose the 60-month time limit through the implementation of an administrative policy. The circuit court initially granted plaintiffs' motion for a preliminary injunction to enjoin the DHS Director from terminating the cash-assistance benefits on the basis of the 60-month limit. The circuit court also ordered that the case could proceed as a class action on behalf of "all current and future FIP recipients who have been or will be denied or terminated from FIP assistance based on a 60 month limit when they have not received FIP for 48 countable months under the Social Welfare Act."

In an earlier interlocutory appeal in this case, this Court, in lieu of granting leave to appeal, peremptorily reversed and vacated the preliminary injunction because "[p]laintiffs failed to establish a likelihood of prevailing on the merits of their claim." *Smith v Dep't of Human Servs Dir*, unpublished order of the Court of Appeals, entered November 3, 2011 (Docket No. 306846). Following this decision, the DHS Director moved for reconsideration of the circuit court's order granting the class certification. The DHS Director also moved for summary disposition under MCR 2.116(C)(8)

---

[3] Plaintiffs also filed the action as next friends of their minor children, but the circuit court did not rule on their motions to be appointed as next friends.

and (C)(10) with respect to plaintiffs' substantive claim, while plaintiffs moved for summary disposition under MCR 2.116(C)(10).

The circuit court denied the DHS Director's motion for reconsideration. In addition, it resolved the cross-motions for summary disposition in favor of plaintiffs on the basis of its determinations that (1) the Social Welfare Act created an entitlement to FIP assistance for individuals who comply with the FIP's family-self-sufficiency plan and (2) the DHS Director exceeded her authority under the separation of powers doctrine by imposing time limits that are not authorized by the Social Welfare Act. On the basis of those determinations, the circuit court entered a judgment (1) permanently enjoining the DHS Director from terminating or denying cash-assistance benefits "based on time limits unless and until it is determined that [class members] have received [benefits] for more than forty-eight countable months under the time limits set by the Social Welfare Act" and (2) enjoining the DHS Director from terminating or denying cash-assistance benefits "to Plaintiffs and members of the Class based on a 60 month limit that starts counting months prior to the October 1, 2007 started [sic] date established by statute and does not have the exemptions required by the Social Welfare Act[.]"

The DHS Director filed two appeals with this Court to challenge the circuit court's determinations. In Docket No. 309447, the Michigan Supreme Court denied the DHS Director's bypass application for leave to appeal, but directed this Court to consider the case on an expedited basis, stating:

> The Court of Appeals is directed to decide this case on an expedited basis, considering whether (1) the circuit

court erred in concluding that defendant may not implement limits on the duration of welfare benefits as part of its authority to establish eligibility criteria for family independence program recipients under MCL 400.57a(3) and/or MCL 400.57b(1)(f) and, if so, (2) whether plaintiffs are entitled to summary disposition on the alternative ground that defendant failed to comply with the requirements of the Administrative Procedures Act [APA], MCL 24.201 *et seq*. [*Smith v Dep't of Human Servs Dir*, 491 Mich 898 (2012).]

## II. STANDARD OF REVIEW

We review de novo a circuit court's decision concerning a motion for summary disposition. *Driver v Naini*, 490 Mich 239, 246; 802 NW2d 311 (2011). Issues involving statutory construction are also reviewed de novo. *Id*. Whether the constitutional principle of separation of powers was violated is also reviewed de novo. *People v Garza*, 469 Mich 431, 433; 670 NW2d 662 (2003).

Although the circuit court did not state the subpart of MCR 2.116(C) on which it relied to resolve the parties' cross-motions for summary disposition, because the parties' motions relied on evidence that went beyond the documentary evidence filed with plaintiffs' complaint, we find review under MCR 2.116(C)(10) appropriate. See *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 55; 744 NW2d 174 (2007). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim based on substantively admissible evidence. MCR 2.116(G)(6); *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). A court should grant the motion if the submitted evidence fails to establish a genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424-425; 751 NW2d 8 (2008).

III. SEPARATION OF POWERS

Because the circuit court's decision to invalidate the DHS Director's action rested on a determination that the separation of powers doctrine was violated, we shall first address the applicability of this doctrine to the parties' dispute. Const 1963, art 3, § 2, states, "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Under this provision, the executive branch has the duty of executing the laws enacted by the legislative branch. See *Kyser v Kasson Twp*, 486 Mich 514, 535; 786 NW2d 543 (2010). "An administrative agency that acts outside its statutory boundaries usurps the role of the legislature." *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 583; 810 NW2d 110 (2011). Accordingly, whether the circuit court erred by finding a violation of the separation of powers doctrine depends on the powers conferred by the Legislature on the DHS. We turn to the Social Welfare Act to determine if the DHS Director had authority to terminate FIP assistance on the basis of the 60-month time limit for TANF funds.

In interpreting the DHS's authority under the Social Welfare Act, our primary goal is to ascertain the legislative intent by first examining the plain language of the statute. *Driver*, 490 Mich at 246-247. "Statutory provisions must be read in the context of the entire act . . . ." *Id.* at 247. An undefined statutory term is given its plain and ordinary meaning unless it is a term of art with a unique legal meaning. *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 156; 809 NW2d 444 (2011). "When a statute specifically defines a given

term, that definition alone controls." *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). If a statute is unambiguous, it is applied as written. *Driver*, 490 Mich at 247. "A statutory provision is ambiguous if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning." *AFSCME*, 293 Mich App at 155. If a statutory provision is ambiguous, judicial interpretation is appropriate. *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 434; 770 NW2d 105 (2009). An administrative agency's construction of a statute that it is charged with executing is entitled to respectful consideration, but is not binding on courts and cannot conflict with the plain language of a statute. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103, 111-112; 754 NW2d 259 (2008).

The circuit court began its review of the DHS's authority by considering whether the Social Welfare Act created an entitlement program. However, because the present issue does not involve whether the DHS Director took action that deprived the class members of due process, but rather whether the DHS Director had authority under the Social Welfare Act to apply the 60-month limit applicable for TANF funds to FIP assistance, we find it unnecessary to address whether an entitlement program existed for due-process purposes. Upon review de novo of the relevant statutory provisions in light of the act as whole, we hold that the circuit court erred by finding that the DHS Director violated the Social Welfare Act—in particular, the exemptions to the 48-month limit established by MCL 400.57p—by imposing a 60-month limit on FIP assistance.

MCL 400.57p states:

Any month in which a recipient has been exempted from the JET program[4] under section 57f(3) or (4)(b) shall not be counted toward the cumulative total of 48 months in a lifetime for family independence program assistance. Any month in which a recipient has been exempted from the JET program under section 57f(4)(e) or (f) may, in the department's discretion, be excluded from the count toward the cumulative total of 48 months in a lifetime for family independence program assistance.

Read in the context of MCL 400.57r, which establishes an individual's lifetime limit for FIP assistance as "not longer than a cumulative total of 48 months," it is clear that the Legislature contemplated that actual payments could extend beyond the 48-month limit if a recipient has been exempted from the JET program.

There is no statutory language that limits actual payments to 60 months. However, considering that the 60-month limit approved by the DHS Director in this case arises from limitations on TANF funding for individuals, the circuit court erred by concluding that the DHS Director has no authority under the Social Welfare Act to impose this limitation. Other statutory provisions, which operate independently of MCL 400.57p, authorize the DHS to use the exhaustion of TANF funding as an eligibility criterion for individuals.

Initially, we note that we reject the DHS Director's argument that the duties imposed on the DHS under MCL 400.57a(3) with respect to the "composition of the program group," standing alone, provide authority to establish an individual's exhaustion of TANF funds as an eligibility criterion. MCL 400.57a(3) provides:

---

4 "JET program" is defined in MCL 400.57(1)(i) as "the jobs, education and training program administered by the Michigan economic development corporation or a successor entity for applicants and recipients of family independence program assistance or a successor program."

> The department shall establish income and asset levels for *eligibility*, types of income and assets to be considered in making *eligibility* determinations, payment standards, *composition* of the program group and the family independence program assistance group, program budgeting and accounting methods, and client reporting requirements to meet the following goals:
>
> (a) Efficient, fair, cost-effective administration of the family independence program.
>
> (b) Provision of family independence program assistance to families willing to work toward eventual self-sufficiency. [Emphasis added.]

In interpreting a statute, a court considers both the plain meaning of a critical word or phrase and its placement and purpose in the statutory scheme. *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999). A court may consult a dictionary to determine the ordinary meaning of an undefined term. *Haynes*, 477 Mich at 36. The words in a statute should be read together to harmonize the meaning and give effect to the act as a whole. *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 421; 662 NW2d 710 (2003).

*Random House Webster's College Dictionary* (1997) defines the word "eligible," in relevant part, as "meeting the stipulated requirements; qualified." The word "eligibility" as used in MCL 400.57a(3), examined in context, plainly depends on income and asset levels. The *Random House Webster's College Dictionary* (1997) defines "composition," in relevant part, as "the manner of being composed; arrangement or combination of parts or elements" and "the parts or elements of which something is composed; makeup; constitution." As used in MCL 400.57a(3), the term "composition" requires a determination of the "program group" and the "family independence program assistance group." While the

DHS is permitted to take action that serves the goal of a cost-effective FIP, "program group" and "family independence program assistance group" are both statutorily defined phrases. "Program group" is defined as "a family and all those individuals living with a family whose income and assets are considered for purposes of determining financial eligibility for family independence program assistance." MCL 400.57(1)(n). "Family independence program assistance group" is defined as "all those members of a program group who receive family independence program assistance." MCL 400.57(1)(f).

As a whole, MCL 400.57a(3) permits the DHS to determine issues involving financial eligibility using income and asset information. The DHS is also authorized to determine which individuals make up the program group. However, standing alone, the statute does not authorize the DHS to add an eligibility criterion based on whether TANF funding has been exhausted for an individual because of the federal 60-month limit. Nonetheless, MCL 400.57b(1) provides:

An individual who meets all of the following requirements is eligible for family independence program assistance:

(a) Is a member of a family or a family independence program assistance group.

(b) Is a member of a program group whose income and assets are less than the income and asset limits set by the department.

(c) In the case of a minor parent, meets the requirements of subsection (2).

(d) Is a United States citizen, a permanent resident alien, or a refugee. If the applicant indicates that he or she is not a United States citizen, the department shall verify

the applicant's immigration status using the federal systematic alien verification for entitlements (SAVE) program.

(e) Is a resident of this state as described in section 32.

(f) Meets any other eligibility criterion required for the receipt of federal or state funds *or determined by the department to be necessary for the accomplishment of the goals of the family independence program.* [Emphasis added.]

"The commonly understood word 'any' generally casts a wide net and encompasses a wide range of things." *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). Therefore, it is plain that the Legislature authorized the DHS to add an eligibility criterion that is not required for federal or state funds but is necessary to accomplish the goals of the FIP. Further, MCL 400.57a(3)(a) establishes that one goal of the FIP is to achieve an efficient, fair, cost-effective administration of the FIP, and the DHS Director's affidavit filed in support of her motion for summary disposition indicates that "fiscal soundness" is one of the purposes for terminating FIP assistance when TANF funds are exhausted. Thus, MCL 400.57a(3) and MCL 400.57b(1)(f), read together, are reasonably construed as permitting the DHS to consider its added eligibility criterion for purposes of deciding the composition of the program group and the family independence program assistance group. In addition, the DHS had no duty to consider hardship criteria to extend the 60-month period because the use of the phrase "[t]he State may exempt" in the applicable federal law, 42 USC 608(a)(7)(C)(i), denotes permissive action. See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008) (noting that the word "may" is generally an indication of permissive action).

In sum, the circuit court erred by granting plaintiffs summary disposition based on the doctrine of separa-

tion of powers. MCL 400.57a(3)(a) and MCL
400.57b(1)(f) provide statutory authority for the DHS
Director's reliance on fiscal soundness to add an eligi-
bility criterion that would disqualify individuals from
FIP assistance based on the exhaustion of federal TANF
funds.

## IV. ADMINISTRATIVE PROCEDURES ACT

Plaintiffs nevertheless contend that they are entitled
to summary disposition because the DHS did not follow
the rulemaking procedures of the APA. This issue
requires consideration of general provisions in the
Social Welfare Act, see MCL 400.6, that are applicable
to the DHS, as well as consideration of relevant provi-
sions of the APA. MCL 400.6, provides, in pertinent
part:

> (1) The family independence agency may promulgate all
> rules necessary or desirable for the administration of
> programs under this act. Rules shall be promulgated under
> the administrative procedures act of 1969, Act No. 306 of
> the Public Acts of 1969, being sections 24.201 to 24.328 of
> the Michigan Compiled Laws. Beginning 2 years after the
> effective date of subsection (2), if the Michigan supreme
> court rules that sections 45 and 46 of Act No. 306 of the
> Public Acts of 1969, being sections 24.245 and 24.246 of the
> Michigan Compiled Laws, are unconstitutional and a stat-
> ute requiring legislative review of administrative rules is
> not enacted within 90 days after the Michigan supreme
> court ruling, this subsection does not apply.

> (2) The family independence agency may develop regu-
> lations to implement the goals and principles of assistance
> programs created under this act, including all standards
> and policies related to applicants and recipients that are
> necessary or desirable to administer the programs. These
> regulations are effective and binding on all those affected
> by the assistance programs. Except for policies described in
> subsections (3) and (4), regulations described in this sub-

section, setting standards and policies necessary or desirable to administer the programs, are exempt until the expiration of 12 months after the effective date of this subsection from the rule promulgation requirements of the administrative procedures act of 1969, Act No. 306 of the Public Acts of 1969, being sections 24.201 to 24.328 of the Michigan Compiled Laws. Upon the expiration of 12 months after the effective date of this subsection, regulations described in this subsection are not effective and binding unless processed as emergency rules under section 48 of Act No. 306 of the Public Acts of 1969, being section 24.248 of the Michigan Compiled Laws, or promulgated in accordance with Act No. 306 of the Public Acts of 1969.

(3) The family independence agency may develop policies to establish income and asset limits, types of income and assets to be considered for eligibility, and payment standards for assistance programs administered under this act. Policies developed under this subsection are effective and binding on all those affected by the assistance programs. Policies described in this subsection are exempt from the rule promulgation requirements of Act No. 306 of the Public Acts of 1969. Not less than 30 days before policies developed under this subsection are implemented, they shall be submitted to the senate and house standing committees and appropriation subcommittees with oversight of human services.

(4) *The family independence agency may develop policies to implement requirements that are mandated by federal statute or regulations as a condition of receipt of federal funds.* Policies developed under this subsection are effective and binding on all those affected by the programs. *Policies described in this subsection are exempt from the rule promulgation requirements of Act No. 306 of the Public Acts of 1969.* [Emphasis added.]

The DHS Director argues that MCL 400.6(4) applies to the pertinent policy because the DHS is implementing a federal requirement that TANF funds not be paid to persons for more than a cumulative period of 60

months. *To the extent that only federal monies are involved,* we agree. 42 USC 608(a)(7)(A) states:

> A State to which a grant is made under section 603 of this title shall not use any part of the grant to provide assistance to a family that includes an adult who has received assistance under any State program funded under this part attributable to funds provided by the Federal Government, for 60 months (whether or not consecutive) after the date the State program funded under this part commences, subject to this paragraph.

By cutting off federal funds from individuals after they have received 60 months of benefits, the DHS is following a federal mandate and need not follow the rulemaking procedures outlined in the APA. MCL 400.6(4). Plaintiffs argue that the federal 60-month limit is not a mandate (even assuming, arguendo, that only federal funds are at issue) because the federal law also allows for optional hardship exemptions that can extend the 60-month limit. However, we conclude that (1) there is a clear mandate involving a 60-month limit, (2) there are optional exemptions, and (3) the existence of the *option* for exemptions does not somehow extinguish the mandate.

While there is an exemption from the rulemaking requirements for the cutting off of federal monies, it is clear that some state funds are used in administering the FIP program. To the extent that plaintiffs would be entitled to FIP benefits derived from state funds, we find a violation of the APA in connection with the challenged policy. Indeed, the deprivation of state funding otherwise provided by state law cannot reasonably be deemed a federal mandate under MCL 400.6(4). The DHS Director focuses on the amendment of the "Group Composition" section of Michigan's TANF State Plan and related policies, but the DHS's authority to exclude

a person from a group stems, as previously discussed, from its authority to add an eligibility criterion that the DHS determines is necessary to accomplish the FIP goals under MCL 400.57b(1)(f). The eligibility criterion plainly falls within the broad provision in MCL 400.6(2), which requires rulemaking under the APA for "all standards and policies related to applicants and recipients that are necessary or desirable to administer the programs."

The DHS Director has also failed to establish any provision of the APA that would exempt the DHS from developing its policy as a rule under the APA. "Rule" is defined in the APA as "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency." MCL 24.207. The APA also specifies numerous agency actions that do not constitute a rule. MCL 24.207. The DHS Director relies on the exception set forth in MCL 24.207(j): "A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected."[5] We reject the DHS Director's claim that the exception set forth in MCL 24.207(j) applies. MCL 400.57a(3) provides that the DHS "shall establish . . . composition of the program group and the family independence program assistance group . . . ." The word "shall" denotes mandatory action. *Costa v Community Emergency Med Servs, Inc*, 475 Mich 403, 409; 716 NW2d 236 (2006). A mandatory

---

[5] The DHS Director also relies on MCL 24.207(o), an exception for federal mandates. The cutting off of *state funds*, as noted earlier, cannot be considered a federal mandate.

action does not fall within the exception set forth in MCL 24.207(j). *Spear v Mich Rehab Servs*, 202 Mich App 1, 4-5; 507 NW2d 761 (1993).

The DHS Director's claim could, at first blush, have merit if it is considered in light of the DHS's authority to add an eligibility criterion under MCL 400.57b(1)(f). However, MCL 400.6(2) mandates that the DHS process such regulations as emergency rules or promulgated rules under the APA. The APA provides that "[t]his act shall not be construed to repeal additional requirements imposed by law." MCL 24.211. Because the Social Welfare Act mandates rulemaking under the APA, the DHS's added eligibility criterion is not exempt from the APA. See *Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 186-188; 428 NW2d 335 (1988) (concluding that the agency's attempt to implement a mandatory hearing policy did not constitute the exercise of permissive statutory authority under MCL 24.207(j) when the statute applicable to the agency mandated that hearings be conducted pursuant to promulgated rules).[6]

An agency's failure to substantially comply with the procedural requirements for promulgating rules under the APA renders a rule invalid and precludes it from having the force of law. MCL 24.243; *Goins v Greenfield Jeep Eagle, Inc*, 449 Mich 1, 9-10; 534 NW2d 467 (1995). Because the DHS's policy constitutes a rule, no exception to the rulemaking requirements of the APA applies, and the DHS failed to follow the procedures for promulgating rules, the circuit court correctly concluded that

---

[6] Because MCL 400.6(2) applies, it is unnecessary to consider plaintiffs' argument based on *Palozolo v Dep't of Social Servs*, 189 Mich App 530; 473 NW2d 765 (1991).

the rule is invalid to the extent that state funding is involved.[7]

## V. CLASS CERTIFICATION

The DHS Director also argues that the circuit court erred by certifying the plaintiffs' case as a class action under MCR 3.501. We disagree.

We review de novo the proper interpretation of MCR 3.501. *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009). We review for clear error any factual findings made by the circuit court. *Id*. We review the court's discretionary decisions for an abuse of discretion. *Id*. "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

Contrary to the DHS Director's argument on appeal, the circuit court was not required to apply the federal "rigorous analysis" approach to determine whether to certify the class action. MCR 3.501(A) provides sufficient guidance for considering a request for class certification. *Henry*, 484 Mich at 502. MCR 3.501(A)(1) contains the following prerequisites for a class action:

 (a) the class is so numerous that joinder of all members is impracticable;

 (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;

 (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[7] The record is not clear regarding how the FIP program operates in terms of distributing state funds versus federal funds. Further proceedings may serve to clarify this issue.

(d) the representative parties will fairly and adequately assert and protect the interests of the class; and

(e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

The DHS Director focuses on subparts (b) and (e). We reject the DHS Director's argument that plaintiffs' class fails the commonality requirement of MCR 3.501(A)(1)(b). This prerequisite only requires "the common issue or issues to predominate over those that require individualized proof." *Hill v City of Warren*, 276 Mich App 299, 311; 740 NW2d 706 (2007). The circuit court did not clearly err by finding a predominating issue of law concerning the validity of the DHS Director's implementation of a 60-month time limit for receiving cash-assistance benefits.

With respect to MCR 3.501(A)(1)(e), the court rule provides a number of factors that a trial court should consider when evaluating whether a class action would be superior to other forms of adjudication. MCR 3.501(A)(2). This prerequisite to class certification is essentially a practicality test that promotes the convenient administration of justice. *Hill*, 276 Mich App at 314. A court should not evaluate the merits of the case when determining whether to certify a class action. *Henry*, 484 Mich at 504-505. Therefore, we reject the DHS Director's argument that the possible effect of this case on funding for FIP assistance weighs against the circuit court's finding that a class action was a superior means of adjudication.

We also reject the DHS Director's argument that plaintiffs should have pursued their claim by requesting a declaratory ruling from the DHS, followed by an action to obtain a declaratory judgment, under the APA. See MCL 24.263 and MCL 24.264. An action for a

declaratory judgment authorized by MCL 24.264 was not applicable to plaintiffs' claim because it does not involve promulgated rules. See *Jones v Dep't of Corrections*, 185 Mich App 134, 137; 460 NW2d 575 (1990), and *Bentley v Dep't of Corrections*, 169 Mich App 264, 270; 425 NW2d 778 (1988). In addition, MCL 24.263 did not apply because plaintiffs were not seeking to apply a rule to an actual set of facts, but rather to have an administrative policy that was not promulgated as a rule declared invalid. See *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 119 n 7; 807 NW2d 866 (2011). In any event, it is clear from the record that the circuit court's concern was that individual actions could lead to different rulings on a question of law. We conclude that the DHS Director has failed to establish any basis for reversal of the circuit court's decision that the class action was a superior means of adjudicating the question of law in this case.

Affirmed in part, reversed in part, and remanded[8] for further proceedings consistent with this opinion. We do not retain jurisdiction.

SERVITTO, P.J., and FORT HOOD, J., concurred with METER, J.

---

[8] Certain aspects of the circuit court's decision were erroneous, and we thus remand for entry of an order that comports with our decision today.